[Cite as *State v. Scott*, 2014-Ohio-3500.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100668**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLMER L. SCOTT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573224-A

**BEFORE:** Rocco, J., Boyle, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 14, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

BY: Jeffrey M. Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Kevin R. Filiatraut
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

**{¶1}** Defendant-appellant Willmer L. Scott appeals his conviction after he pled guilty to aggravated murder. Scott claims his guilty plea was invalid because (1) the trial court failed to specifically inform him, as part of the Crim.R. 11 plea colloquy, that if Scott had gone to trial and been found guilty on all counts, he would have faced the same maximum sentence he faced by pleading guilty to aggravated murder, and (2) Scott received no consideration for his guilty plea. We find no merit to Scott's appeal. His conviction is affirmed.

**{¶2}** On April 15, 2013, Scott was indicted on four counts — aggravated murder, murder, felonious assault, and kidnapping — in connection with the April 2013 stabbing death of Joyce Williams. On October 21, 2013, the morning of trial, the prosecutor stated the terms of a proposed plea offer on the record: If Scott were to plead guilty to the aggravated murder count, the state would recommend that Scott receive a sentence of 20 years to life (the lowest statutory sentence for that offense), the remaining counts would be dismissed, and the state would return a vehicle that had been seized during the investigation to Scott's designated representative. The trial court allowed Scott to meet first with his daughter and counsel and then separately with his daughter to discuss the plea offer. After these discussions, Scott indicated that he would accept the state's plea offer.

**{¶3}** Following a detailed Crim.R. 11(C) colloquy, Scott entered his guilty plea to the aggravated murder count. Concluding that Scott had entered his plea knowingly,

voluntarily, and with a full understanding of his rights, the trial court accepted his plea, found Scott guilty of aggravated murder, and dismissed the remaining counts.

{¶4} The sentencing hearing was conducted the following day. At the sentencing hearing, the prosecutor laid out the alleged facts relating to the offense to which Scott had pled guilty and then, as agreed, recommended that Scott be sentenced to 20 years to life. Several of Scott's family members and Scott's counsel also spoke at the hearing. At the conclusion of the sentencing hearing, the trial court imposed the agreed recommended sentence of life imprisonment with eligibility for parole after 20 years on the aggravated murder charge.

{¶5} Scott timely appealed, presenting a single assignment of error for review:

> The trial court committed error when it failed to inform Mr. Scott of the penalties he risked had he declined to plead guilty and instead insisted on his right to a trial, penalties which were no greater than the penalty to which he agreed.

{¶6} Scott argues that the trial court's failure to explain to him, as part of the Crim.R. 11 plea colloquy, that Scott was agreeing to a recommended sentence that, in all likelihood, was "no less severe than the maximum sentence he could have faced" had he been convicted after a trial "rendered [Scott's] plea * * * neither knowing nor intelligent" because "without that information, he could not know whether accepting the plea was in his best interest." Scott further contends that the plea agreement was "invalid" because there was "no actual consideration" for his guilty plea. Specifically, Scott contends that because he was 61 at the time of the plea hearing, the agreed recommended sentence he received in exchange for his plea of 20 years to life "is

essentially life without the possibility of parole" — the maximum sentence he could have received had he been convicted after trial — and that he, therefore, received no benefit in exchange for his plea. We strongly disagree. Scott's contention that he received no benefit in exchange for his plea defies logic.

{¶7} Under Crim.R. 11(C), prior to accepting a guilty plea to a felony charge, the trial court must personally address the defendant and engage in an "oral dialogue" with the defendant to (1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty involved; (2) inform the defendant of and determine that the defendant understands the effect of the guilty plea and that the court, upon acceptance of the plea, may proceed with judgment and sentence; and (3) inform the defendant of and determine that the defendant understands the constitutional rights he or she waives by pleading guilty, including the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. *See, e.g., State v. Hussing*, 8th Dist. Cuyahoga No. 97972, 2012-Ohio-4938, ¶ 18; Crim.R.11(C).

{¶8} Whether the trial court accepted a plea in compliance with Crim.R. 11(C) is subject to de novo review. *State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6. "'We are required to review the totality of the circumstances and

determine whether the plea hearing was in compliance with Crim.R. 11(C).'" *Id.*, quoting *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

**{¶9}** In determining whether the trial court has satisfied its duties in accepting a plea under Crim.R. 11, reviewing courts distinguish between constitutional and nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 474. A trial court must strictly comply with the mandates of Crim.R. 11(C)(2)(c) regarding the waiver of constitutional rights, meaning the court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. *State v. Boggan*, 8th Dist. Cuyahoga No. 100096, 2014-Ohio-1428, ¶ 6, citing *Veney* at

¶ 27. With respect to the other requirements of Crim.R. 11(C)(2)(a) and (b) involving nonconstitutional rights, including the defendant's understanding of the nature of the charges, the maximum penalty involved, and the effect of a guilty plea, substantial compliance is sufficient. *State v. Owens*, 8th Dist. Cuyahoga Nos. 100398 and 100399, 2014-Ohio-2275, ¶ 7, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant who challenges his or her guilty plea on the basis that the trial court did not substantially comply with the nonconstitutional aspects of Crim.R. 11(C) must also show prejudice, i.e., that the plea

would not have been otherwise entered, before the plea will be vacated. *Boggan,* 2014-Ohio-1428 at ¶ 7, citing *Veney* at ¶ 17, and *Nero* at ¶ 108.

{¶10} A review of the transcript from the plea hearing reveals that the trial court complied with Crim.R. 11(C) and supports the trial court's determination that Scott's guilty plea was knowingly, voluntarily, and intelligently made.

{¶11} At the outset of the hearing, the prosecutor identified the sentencing options the trial court would have if Scott were to be convicted of aggravated murder and the agreed recommended sentence that was part of the state's plea offer:

This defendant faces, your Honor, a four count indictment.

Count 1 is aggravated murder. Count 2 is murder. Count 3 is felonious assault and Count 4 is kidnapping.

As you know, Judge, if the defendant were to be convicted of aggravated murder, the sentencing court would have four options as far as sentencing goes which would be 20 years to life, 25 years to life, 30 years to life or life without the possibility of parole.

The plea that the State of Ohio has offered to this defendant is a plea to — we would expect a plea to Count 1, aggravated murder, and there would be an agreement between the parties. An agreed recommended sentence to the Court that he receive the lowest sentence within that range which would be 20 years to life.

{¶12} After Scott expressed his desire to accept the state's plea offer, the trial judge began his Crim.R. 11 colloquy by confirming Scott's understanding of the plea agreement. The trial judge then asked Scott general questions regarding his level of education, establishing that he had received a GED, questioned him regarding whether he was under the influence any drugs, alcohol, or medication that would impact his ability to

understand the proceedings, and inquired whether Scott had discussed the facts of his case with counsel, listened to his advice, and was satisfied with the representation he had received. Scott responded appropriately to each question. The trial judge next proceeded to explain to Scott his constitutional rights and what he would be waiving, with respect to each of those rights, by pleading guilty to the aggravated murder offense with which he had been charged. In each instance, Scott indicated that he understood and confirmed that he wished to waive his constitutional rights by entering a guilty plea.

{¶13} The trial court then identified the aggravated murder charge and the potential range of sentences Scott could receive upon conviction, i.e., life with parole after 20 years, life with parole after 25 years, life with parole after 30 years, or life without parole. The trial court also clearly explained the effect of the "agreed recommended sentence" that was part of the plea agreement, making sure Scott understood that a sentence of life with parole after 20 years was only a recommendation to the trial court and that the trial court could impose one of the "higher degrees of the sentence" if it deemed it appropriate. The trial court also made sure Scott understood the effect of his guilty plea and that the trial court, upon acceptance of the plea, could immediately proceed with judgment and sentencing. Scott stated affirmatively that he understood the charge to which he was pleading and the potential sentences and indicated that he had no questions concerning his plea, his rights, the charges, or the penalties and risks discussed. He also confirmed that no one had made any promises, threats, or

inducements to cause him to enter his plea. Scott's counsel indicated that he was satisfied that the trial court had complied with Crim.R. 11.

{¶14} The record reflects that the trial court went to great lengths to ensure that Scott understood the terms of the plea agreement, the potential sentences, and what Scott would be giving up as a result of his plea, including that he would have to serve life in prison and would only be eligible for parole after 20 years (if the trial judge accepted the agreed recommended sentence) or longer (if he did not):

> THE COURT: * * * Now, you understand that as a result of this plea, you would have to serve life in prison, and your only possibility of parole would be after — if I accept the agreed sentence — would come up after 20 years. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: It might be a greater time if I impose the increased sentences. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Do you have any questions concerning your plea as it stands right now?
>
> THE DEFENDANT: No, your Honor.

{¶15} Based on the foregoing, we find that the trial court conducted a detailed and thorough plea colloquy prior to accepting Scott's plea and that the totality of the circumstances indicates that Scott subjectively understood the implication of his guilty plea and the potential penalties he could receive as a result of his plea. Having complied with Crim.R. 11, the trial court was under no obligation to go a step further and juxtapose

the potential penalties of the crime to which Scott was pleading guilty against those he could face if he chose to go to trial.

{¶16}  With respect to Scott's contention that there was no meaningful consideration for his plea, we do not agree that Scott received nothing of value in exchange for his guilty plea.  As a result of his plea, there was no trial.  An agreed sentence was recommended to the trial court.  Even though the trial court was not bound by the state's recommendation in sentencing Scott and, even though, given his age, there was a substantial likelihood that Scott would die before he had a chance to appear before the parole board even if (as ultimately occurred) the trial court imposed the recommended sentence of 20 years to life, there was still a chance that Scott might live to age 81 and be eligible for parole after 20 years if the trial court imposed the agreed recommended sentence.  Further, there are a number of reasons a defendant may choose to enter a guilty plea rather than go to trial, besides a possible reduction in sentence.  For example, a defendant may want to take responsibility for his crime, a defendant may wish to avoid the attention of a public trial, a defendant may simply want the case to be over, or a defendant may wish to spare the victim's family (or his own family) the further trauma of sitting through a trial, particularly, where, as here, there appears to have been substantial evidence of the defendant's guilt and little in the way of a defense. Scott's argument also wholly disregards the significant moral value a defendant may place on making peace with his maker, his family, the victim, the victim's family, and the community, which may be realized by entering a guilty plea.

**{¶17}** Crim.R. 11 requires that a trial judge take certain steps to ensure that guilty pleas are knowingly, voluntarily, and intelligently made. The purpose of the Crim.R. 11(C) colloquy is to ensure that the defendant understands the plea the defendant is entering, the potential sentence involved, and the rights the defendant is voluntarily waiving by entering a guilty plea. Crim.R. 11 does not require that the trial court inquire as to a defendant's reasons for entering a guilty plea or that it determine that a plea is in the defendant's "best interests," before accepting a guilty plea. There is nothing in the record to suggest that Scott entered his guilty plea without giving due consideration to the state's offer and what he was receiving and giving up by accepting that offer. To the contrary, the record reflects that the defendant consulted first with his counsel and his daughter, and then again with his daughter privately, prior to accepting the state's plea offer.

**{¶18}** We find no error by the trial court either in the manner in which it conducted the Crim.R. 11(C) colloquy or in its acceptance of Scott's guilty plea. The record reflects that under the totality of the circumstances, Scott subjectively understood the implications of his plea and the rights he was waiving. Furthermore, Scott has failed to even allege — much less demonstrate — any prejudicial effect of the trial court's alleged error, i.e., that he would not have pled guilty if the trial court had also specifically informed Scott that, given his age, he was agreeing to "a recommended sentence that was likely no less severe than the maximum sentence he could have faced after trial." Without any evidence that his plea would not have otherwise been made, Scott has not

met his burden of showing prejudice that would necessitate vacating his plea. Scott's sole assignment of error is overruled.

{¶19} Scott's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentences.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, A.J., and
TIM McCORMACK, J., CONCUR